IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

| | |
|---|---|
| **CALVIN DEE AYCOCK,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  No. 14-cv-2789-JPM-tmp |
| | ) |
| **BANK OF AMERICA, N.A.,** | ) |
| **MARINOSCI LAW GROUP, PC,** | ) |
| | ) |
| Defendants. | ) |
| | ) |

_____

**REPORT AND RECOMMENDATION**
_____

Before the court are the Motions to Dismiss filed by defendants Bank of America, N.A. ("BOA") on October 27, 2014 (ECF No. 5), and the Marinosci Law Group, PC ("Marinosci") on October 31, 2014 (ECF No. 8). Plaintiff Calvin Dee Aycock filed a response in opposition on November 14, 2014. (ECF No. 10.) On April 20, 2015, Aycock filed a proposed amended complaint, which the court will construe as a motion to amend his complaint. (ECF No. 25.) BOA responded by filing a motion to strike the proposed amendment on April 29, 2015. (ECF No. 26.)

For the reasons below, it is recommended that the defendants' motions be granted, and Aycock's motion to amend be denied.

**I. PROPOSED FINDINGS OF FACT**

Aycock filed a fifty-one page complaint on October 10, 2014. (ECF No. 1.) Although it is difficult to decipher, it appears that Aycock's complaint arises out of the foreclosure of a residence located at 8840 River Rise Drive, Cordova, Tennessee. Among his various allegations, Aycock alleges that "the mortgage note which purportedly secures the subject real property of which AYCOCK has equitable and possessory interest, . . . has been discharged by either 'charge off' against federal taxes or by mortgage default insurance proceeds . . . ." (Compl. ¶ 20.) Aycock also alleges that BOA should not be allowed to initiate foreclosure proceedings because BOA is a debt collector that is not entitled to the collateral used for a loan. (Compl. ¶ 26.) Aycock also alleges that Marinosci sent him a letter on April 28, 2014, stating that he was in default with a current unpaid principal balance of $348,647.02 plus interest, costs, and attorney fees. (Compl. ¶ 30.) Aycock alleges that BOA and Marinosci "do not have the legal right to collect said sum from AYCOCK or any other amount." (Compl. ¶ 33.) Aycock "demands strict proof and an accounting of any and all alleged claims made by BOA and Marinosci." (Compl. ¶ 37.) Aycock claims that he sent by "first class U.S. Mail a debt validation letter to BOA" and that he received "a non-responsive response" from BOA. (Compl. ¶¶ 34, 41.) Aycock further alleges that "BOA and MARINOSCI have used the U.S. Postal Service in a

fraudulent attempt to collect a debt from Aycock, in violation of [] federal statutes and state codes, for an alleged debt purportedly owed to a 'Lender' or 'Creditor' other than BOA." (Compl. ¶ 45.) Aycock purports to bring a variety of claims, including claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq. and the Tennessee Consumer Protection Act ("TCPA"), Tenn. Code Ann. § 47-18-104, et seq. (Compl. ¶¶ 60-77; 78-82.)

In their motions to dismiss, BOA and Marinosci argue that Aycock's complaint does not meet the requirements of Rule 8 of the Federal Rules of Civil Procedure because he has not alleged any facts that support a cause of action to plausibly state a claim for relief.

## II. PROPOSED CONCLUSIONS OF LAW

### A. Standard of Review

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as stated in Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007), are applied. Hill v. Lappin, 630 F.3d 468, 470B71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement

to relief.'" Williams v. Curtin, 631 F.3d 380, 383 (6th Cir. 2011) (quoting Iqbal, 556 U.S. at 681) (alteration in original). "[P]leadings that . . . are no more than conclusions[] are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 556 U.S. at 679; see also Twombly, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

Rule 8(a)(2) requires "[a] pleading that states a claim for relief" to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint violates these provisions when it "is so verbose that the Court cannot identify with clarity the claim(s) of the pleader and adjudicate such claim(s) understandingly on the merits." Harrell v. Dirs. of Bur. of Narcotics & Dangerous Drugs, 70 F.R.D. 444, 446 (E.D. Tenn. 1975); see also Dillard v. Rubin Lublin Suarez Serrano, No. 12-2182-STA-dkv, 2013 WL 1314399, at *2 (W.D. Tenn. Mar. 28, 2013) (citing Flayter v. Wis. Dep't of Corr., 16 F. App'x 507, 509 (7th Cir. 2001) (dismissing 116-page complaint pursuant to Rule 8(a)(2)); Plymale v. Freeman, No. 90-

2202, 1991 WL 54882, at *1 (6th Cir. Apr. 12, 1991) (district court did not abuse its discretion in dismissing with prejudice "rambling" 119-page complaint containing nonsensical claims); Jennings v. Emry, 910 F.2d 1434, 1436 (7th Cir. 1990) ("A . . . complaint must be presented with intelligibility sufficient for a court or opposing party to understand whether a valid claim is presented and if so what it is. And it must be presented with clarity sufficient to avoid requiring a district court or opposing party to forever sift through its pages in search of that understanding.") (citations omitted)); Michaelis v. Neb. State Bar Ass'n, 717 F.2d 437, 438-39 (8th Cir. 1983) (per curiam) (affirming dismissal of 98-page complaint where "[t]he style and prolixity of these pleadings would have made an orderly trial impossible"); Gordon v. Green, 602 F.2d 743, 744-45 (5th Cir. 1979) (concluding that a 4000-page pleading, comprised of "various complaints, amendments, amended amendments, amendments to amended amendments, and other related papers," did not comply with Rule 8(a) "as a matter of law"); Windsor v. A Fed. Exec. Agency, 614 F.Supp. 1255, 1258 (M.D. Tenn. 1983) (noting that a 47-page complaint was excessive, in light of the purpose of a pleading to state a simple claim, as well as "confusing and distracting" and ordering plaintiff to amend his complaint to comply with Rule 8), aff'd mem., 767 F.2d

923 (table), 1985 WL 13427 (6th Cir. June 27, 1985) (per curiam).

"*Pro se* complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." Williams, 631 F.3d at 383 (internal quotation marks omitted). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989); see also Brown v. Matauszak, 415 F. App'x 608, 613 (6th Cir. 2011) ("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading") (internal quotation marks omitted); Payne v. Sec'y of Treasury, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); cf. Pliler v. Ford, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); Young Bok Song v. Gipson, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come

before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.")

**B. FDCPA Claims**

"Congress enacted the FDCPA in 1977 'to eliminate abusive debt collection practices by debt collectors' and to insure that debt collectors who refrain from abusive practices are not competitively disadvantaged." McCabe v. Crawford & Co., 272 F. Supp. 2d 736, 741 (N.D. Ill. 2003); 15 U.S.C. § 1692(e). The FDCPA forbids a debt collector from making a false representation of "the character, or legal status of any debt." 15 U.S.C. § 1692e(2)(A); see also Aronson v. Commercial Fin. Servs., Inc., No. Civ. A 96-2113, 1997 WL 1038818, at *4 (W.D. Pa. Dec. 22, 1997) (a debt collector's false statement made during a telephone conversation violates the § 1692e(2)(A) if it misrepresents the amount or character of a debt); Kimber v. Federal Fin. Corp., 668 F. Supp. 1480, 1488-89 (D. Ala. 1987) (debt collector violates § 1692e(2)(A) when it threatens to sue a consumer on a claim that the debt collector knows is barred by the applicable statute of limitations).

A *prima facie* FDCPA claim must allege facts showing: (1) the plaintiff is a natural person who is harmed by violations of the FDCPA, or is a "consumer" within the meaning of 15 U.S.C.A. §§ 1692a(3), 1692(d) for purposes of a cause of action, 15 U.S.C.A. § 1692c or 15 U.S.C.A. § 1692e(11); (2) the "debt"

arises out of a transaction entered primarily for personal, family, or household purposes, 15 U.S.C.A. § 1692a(5); (3) the defendant collecting the debt is a "debt collector" within the meaning of 15 U.S.C.A. § 1692a(6); and (4) the defendant has violated, by act or omission, a provision of the FDCPA, 15 U.S.C.A. § 1692a-16920; 15 U.S.C.A. § 1692a; 15 U.S.C.A. § 1692k. Langley v. Chase Home Fin. LLC, No. 1:10-cv-604, 2011 WL 1150772, at *5 (W.D. Mich. Mar. 11, 2011) (citing Whittiker v. Deutsche Bank Nat'l Trust Co., 605 F. Supp. 2d 914, 938-39 (N.D. Ohio 2009)).

Aycock has failed to provide any factual allegations that plausibly suggest a claim for relief under the FDCPA. Even assuming, *arguendo*, that Aycock has sufficiently alleged that he is a consumer with a debt and that defendants are properly classified as "debt collectors" under the statute, he has failed to provide any factual support that any defendant has violated a provision of the FDCPA. Instead, Aycock offers conclusory legal statements such as the following:

> 46. AYCOCK is informed and believes and therefore alleges BOA and MARINOSCI have violated the Fair Debt Collection Practices Act, in 15 USC §1692e, because each defendant has intentionally made and/or employed false, deceptive and misleading representations and/or means in connection with a debt alleged to be owed by AYCOCK. Furthermore, AYCOCK believes such representations made to AYCOCK are possibly being unfairly made to many other consumers.

> 47. BOA and MARINOSCI have allegedly violated the Fair Debt Collection Practices Act, in 15 USC §1692d, the natural consequence of which does harass, oppress and abuse AYCOCK. As a result of such abusive and harassing communications, BOA and MARINOSCI should have known the natural consequences of said violative conduct would harass, oppress or abuse AYCOCK. AYCOCK believes such communications made to AYCOCK are possibly being unfairly made to many other consumers.

(Compl. ¶¶ 46, 47.) These mere legal conclusions couched as factual allegations are insufficient to state a claim under the FDCPA. It is therefore recommended that Aycock's claims under the FDCPA be dismissed.

## C. TCPA Claims

In analyzing Aycock's TCPA claim, the court finds the analysis in Pugh v. Bank of America, No. 13-2020, 2013 WL 3349649, at *5-10 (W.D. Tenn. July 2, 2013), also a case arising from a foreclosure, instructive.

> Under the TCPA, "the unfair or deceptive acts must affect trade or commerce, as defined by the Act." Davenport v. Bates, M2005-02052-COA-R3CV, 2006 Tenn. App. LEXIS 790, at *54, 2006 WL 3627875 (Tenn. Ct .App. Dec. 12, 2006). In Pursell v. First Am. Nat'l Bank, 937 S.W.2d 838, 841-42 (Tenn. 1996), the Tennessee Supreme Court held that a lender's repossession of collateral securing a defaulted loan is not actionable under the TCPA. The plaintiff in Pursell borrowed money from First American to purchase a pickup truck, which he pledged as collateral for the loan. Id. at 839. When the plaintiff became delinquent on his payments, the bank repossessed the truck, sold it at auction for $3,000 more than what was owed, and retained the proceeds as "collection expenses." Id. at 839-40. The plaintiff brought suit against the bank and the repossession company alleging several causes of action, including one under the

TCPA. Id. at 840. The trial court dismissed the TCPA claim, and the Supreme Court affirmed on the basis that collateral repossession and disposition practices are not within the definition of "trade or commerce" in the TCPA. Id. at 840-42. The Pursell court held that, "[t]hough the definitions of 'trade or commerce' contained within the [TCPA] are broad, they [do] not extend to this dispute, which arose over repossession of the collateral securing the loan." Id. at 842.

Since Pursell, courts have consistently held that a lender's actions for foreclosure and debt-collection, even when pursuing loan modification, are not covered under the TCPA. See Knowles v. Chase Home Fin., LLC, No. 1:11-cv-1051, 2012 U.S. Dist. LEXIS 166748, at *23-24 (W.D. Tenn. Aug. 2, 2012); Peoples v. Bank of Am., No. 11-2863-STA, 2012 U.S. Dist. LEXIS 22208, at *9, 2012 WL 601777 (W.D. Tenn. Feb.22, 2012) (holding that lender's negotiation of a mortgage modification while simultaneously pursuing foreclosure was not actionable under the TCPA); Vaughter v. BAC Home Loans Servicing, LP, No. 3:11-cv-00776, 2012 U.S. Dist. LEXIS 6066, at *5-6, 2012 WL 162398 (M.D. Tenn. Jan. 19, 2012) (deciding that TCPA did not apply to defendant's allegedly deceptive acts during loan modification negotiations and home foreclosure); Hunter v. Washington Mut. Bank, No. 2:08-CV-069, 2008 U.S. Dist. LEXIS 71587, at *5-6, 2008 WL 4206604 (E.D. Tenn. Sept. 10, 2008) (dismissing TCPA claim based on bank's attempts to collect from delinquent borrower).

The Complaint makes clear that this dispute arises from and addresses a mortgage transaction. . . . The gravamen of Plaintiffs' allegations is that foreclosing on the Property would be improper because of representations made during a series of events that led to the denial of Plaintiffs' request for a loan modification. Those events occurred in the context of a dispute that is effectively a "dispute over repossession of the collateral securing [a] loan." Pursell, 937 S.W.2d at 842. "[W]hen a debtor defaults on a mortgage payment, and the mortgage holder forecloses upon the collateral that secured the loan (in this case, the Property), the TCPA does not apply." Launius v. Wells Fargo Bank, N.A., No. 3:09-CV-501, 2010 U.S. Dist. LEXIS 89234, at *5-6, 2010 WL 3429666 (E.D. Tenn. Aug. 27, 2010).

2013 WL 3349649 at *7. Similarly here, Aycock's complaint relates to a dispute over repossession of the collateral securing a loan. For that reason, the court concludes that the TCPA is inapplicable, and it is recommended that Aycock's TCPA be dismissed.

**D. Other Claims**

Aycock also appears to assert that a cause of action for "Accounting." (Compl. ¶¶ 54-59.) An "accounting," however, is a remedy, not an independent cause of action. See Stockler v. Reassure Am. Life Ins. Co., No. 11-CV-15415, 2013 WL 866486, at *11 (E.D. Mich. Mar. 7, 2013) (citing Roy v. Mich. Child Care Ctrs., Inc., No. 08-10217, 2009 WL 648496, at *1 (E.D. Mich. Mar. 11, 2009) ("[A]n accounting is a remedy, rather than a separate cause of action."); Johnson v. Pullman, Inc., 845 F.2d 911, 913, (11th Cir. 1998) ("Although plaintiffs' complaint contained a count in which an accounting was sought, that relief would not be available here absent some independent cause of action.")). Aycock also makes reference to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, et seq., and the Tennessee Collection Service Act ("TCSA"), Tenn. Code Ann. § 62-20-127, et seq. (Compl. ¶ 1.) These mere references to statutes, without an explanation of which factual allegations supposedly support a claim under the statutes, are not

sufficient to state a cause of action. Furthermore, no private right of action exists under the TCSA. See Hunter v. Washington Mut. Bank, No. 2:08-cv-069, 2008 WL 4206604, at *16 (E.D. Tenn. Sept. 10, 2008) ("The statute does not expressly create a private cause of action . . . and the court's research reveals no indication that a private right of action exists under the TCSA. [The TCSA claim] will accordingly be dismissed for failure to state a claim upon which relief may be granted."). Aycock also appears to assert a claim under the "Relevant Part of Article V of the Office of Comptroller Currency's 'Stipulation and Consent to the Issuance of a Consent Order, Dated April 13, 2011.'" (Compl. ¶¶ 83-86.) This consent decree document, attached to Aycock's complaint, appears to be a copy of an agreement between the Comptroller of Currency of the United States of America and BOA. At least one court has previously found that a plaintiff has no private right of action under such consent decrees. See Tonea v. Bank of America, N.A., 6 F. Supp. 3d 1331, 1347 n.2 (N.D. Ga. 2014). For those reasons, it is recommended that these claims be dismissed, as well.

**E. Proposed Amended Complaint**

On April 20, 2015, Aycock also filed a sixty-page proposed amended complaint. (ECF No. 25.) Aycock filed the proposed amended complaint without seeking leave of court. Moreover, the

proposed amended complaint was filed three days after the April 17, 2015 deadline contained in the scheduling order. The court hesitates to consider the proposed amended complaint because Aycock has failed to seek the court's leave to file an amended complaint, and the scheduling order in this case provides that amended pleadings must be filed no later than April 17, 2015. Nevertheless, the court concludes that the proposed amended complaint fails to remedy any of the deficiencies of the original complaint discussed above. In addition, to the extent Aycock attempts in his proposed amended complaint to bring two new claims against defendants – a "lack of standing/wrongful foreclosure" claim (ECF No. 25, ¶¶ 83-103), and a "mortgage fraud" claim (ECF No. 25, ¶¶ 104-06) – these claims would be futile because they fail to state a claim upon which relief may be granted. With regard to the purported state law claims for wrongful foreclosure and lack of standing, they are not supported by existing state law.

> It appears these claims are based on the theory that a foreclosure sale is improper because the transfer and/or assignment of the original note in question is invalid. This theory was rejected by this court in Gibson v. Mortgage Electronic Registration Systems Inc., No. 11–2173, 2012 WL 1601313 (W.D. Tenn. May 7, 2012) (Anderson, J.). See [Moore v. Carrington Mortg. Servs., No. 12-3098-STA-dkv, 2013 WL 2458720, at *13 (W.D. Tenn. June 6, 2013)]. Under Tennessee law, "the lien of a mortgage or trust deed passes, without a special assignment thereof, to the endorsee of a note or transferee of the debt secured by the instrument." Id. (quoting Gibson, 2012 WL 1601313, at

>  *4). Moreover, [plaintiff] has pleaded no plausible facts to support [his] theory that the transfer of the note was invalid.

Holloway v. Netbank, No. 12-2960-STA-TMP, 2014 WL 112029, at *9 (W.D. Tenn. Jan. 10, 2014).

As to the purported mortgage fraud claim, Rule 9(b) requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "The Plaintiff[ ] must plead more than a generalized grievance against a collective group of Defendants in order to meet the requirements of FRCP 9(b)." Masterson v. Meade Cnty. Fiscal Court, 489 F. Supp. 2d 740, 749 (W.D. Ky. 2007) (citing United States ex rel. Bledsoe v. Cmty. Health Sys., Inc., 342 F.3d 634, 643 (6th Cir. 2003)). To comply with Rule 9(b), a complaint alleging a fraudulent representation "must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" Frank v. Dana Corp., 547 F.3d 564, 570 (6th Cir. 2008) (quoting Gupta v. Terra Nitrogen Corp., 10 F. Supp. 2d 879, 883 (N.D. Ohio 1998)). A plaintiff must, "[a]t a minimum . . . allege the time, place and contents of the misrepresentations." Id. (citing Bender v. Southland Corp., 749 F.2d 1205, 1216 (6th Cir. 1984)). "Generalized and conclusory allegations that the Defendants'

conduct was fraudulent do not satisfy Rule 9(b)." Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 361 (6th Cir. 2001). A plaintiff who asserts a claim based on a failure to disclose must plead all the elements with particularity. 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1297, at 72-73, 101 (3d ed. 2004). In his proposed amendment, Aycock fails to identify any false statement allegedly made by defendants, much less the time and date of any false representation. Accordingly, Aycock fails to plead fraud with particularity, and has failed to state a fraud claim. Because Aycock's proposed amendment does not remedy the deficiencies of the existing claims and his new allegations fail to state a claim upon which relief may be granted, the proposed amendment is futile. See Rose v. Hartford Underwriters Ins. Co., 203 F.3d 417, 420 (6th Cir. 2000) ("A proposed amendment is futile if the amendment could not withstand a 12(b)(6) motion to dismiss.").

### III. RECOMMENDATION

For the above reasons, it is recommended that defendants' motions be granted, Aycock's motion to amend be denied, and Aycock's complaint be dismissed in its entirety.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

May 28, 2015
Date

**NOTICE**

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R. 72.1(g)(2). FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**